UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIVE NATION MERCHANDISE, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-100, JANE DOES 1-100 AND XYZ COMPANY, <br><br> Defendant. | Case No.: 18cv2703-GPB(JLB) <br><br> **ORDER SUA SPONTE DISMISSING COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br> **[Dkt. No. 5.]** |

On November 30, 2018, Plaintiff filed a complaint for trademark infringement and related causes of action along with an ex parte application for a temporary restraining order, a seizure order and an order to show cause why a preliminary injunction and seizure order should not issue against unnamed Defendants John and Jane Does, and XYZ Company. (Dkt. Nos. 1, 5-2.) Based on the reasoning below, the Court *sua sponte* DISMISSES the action for lack of subject matter jurisdiction and DENIES Plaintiff's ex parte application for a temporary restraining order as moot.

## Background

Plaintiff Live Nation Merchandise, Inc. ("Plaintiff") is engaged in the business of manufacturing, distributing and selling authorized merchandise, such as T-shirts,

1

sweatshirts and posters, bearing federally registered trademarks, service marks, likenesses, logos and other indicia owned by popular performers. (Dkt. No. 5-3, Weber Decl. ¶ 2.) Pursuant to an agreement between the Fleetwood Mac ("the Group") and Plaintiff, Plaintiff possesses the exclusive right to distribute authorized tour merchandise at all concerts in the United States and elsewhere bearing all trademarks, service marks, likenesses, logos and other indicia of the Group in connection with the tour. (Dkt. No. 1, Compl. ¶ 9; Dkt. No. 5-3, Weber Decl. ¶ 2.) On Saturday, December 8, 2018, the Group will perform at the Viejas Arena in San Diego, California. (Dkt. No. 1, Compl. ¶ 13.) Before and after the concerts on the tour, authorized tour merchandise bearing any or all of the Group's Trademarks will be sold throughout the United States. (Id.) Defendants John Does, Jane Does, and XYZ Company are sued under fictitious names because their true names and capacities are unknown at this time. (Id. ¶ 3.)

"FLEETWOOD MAC" is the trademark of the Group, a prominent and successful musical performing group that began in 1967. (Dkt. No. 5-3, Weber Decl. ¶ 4.) The Group is one of the top ten best-selling groups with over 100 million units sold worldwide, was inducted into the Rock and Roll Hall of Fame in 1998, and was nominated and won numerous awards including Album of the Year from the Academy of Recording Arts and Sciences in 1977. (Id.)

The Group has obtained U.S. Federal Trademark Registration No. 3066017 for use in connection with International Class ("IC") 025 clothing, 009 recordings; IC 020 plastic key chains; IC 021 mugs; and other service and goods; U.S. Federal Trademark Registration No. 1238825 for use in connection with IC 041 entertainment services, and U.S. Federal Trademark Registration No. 4908308 for use in connection with IC 016 posters. (Id. ¶ 5.) Trademark Registration Nos. 3066017 and 1238825 are incontestable. (Id.)

Plaintiff and the Group have spent a great deal of care, time and money in developing the authorized tour merchandise bearing the Group's trademarks including making sure they are high quality and appropriate to their image. (Id. ¶ 7.) However, the

Group as well as other performers have recurring problems with individuals, also referred to as "Bootleggers", who sell infringing tour merchandise near, at and at times, inside the concert venue. (Id. ¶ 8.) On every major prior tour by this Group, Defendant Bootleggers have appeared selling unlawful goods. (Id. ¶ 9.) According to Plaintiff, tours of other groups of this stature also have recurring problems with individuals who sell infringing tour merchandise near, at and sometimes inside a concert venue. (Id. ¶ 8.)

According to Plaintiff's counsel, who has been involved in two prior seizure orders for the Group's prior tours, and in other bootlegging cases, typically, a "core" group of bootleggers follow a successful concert tour of a group and appear from venue to the next, selling identical, illegal merchandise bearing the names of the groups and logos of the tour. (Dkt. No. 5-5, Burns Decl. ¶ 10.) Absent relief, the loss of merchandising income at a single venue could range in the tens of thousands of dollars. (Id. ¶ 11.) Moreover, there is injury to the goodwill of Plaintiff and the Group, through distribution of inferior merchandise and is irreparable. (Id.)

On information and belief, the Complaint claims Defendants will sell and distribute unauthorized, infringing T-shirts, jerseys, caps and/or other merchandise bearing any or all of the Group's trademarks in the vicinity of the concert, before, during and after their performances, and at subsequent concerts during the tour. (Dkt. No. 1, Compl. ¶ 14.) The infringing merchandise is likely to cause confusion among prospective purchasers. (Id. ¶ 15.) Moreover, because the infringing merchandise sold and to be sold is generally of inferior quality, the sale of these merchandise is likely to injure the reputation of the Group which has developed the reputation for high quality associated with Plaintiff and the authorized tour merchandise. (Id. ¶ 16.)

The Complaint alleges four causes of action for infringement of registered trademark; violations of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) for false designation of origin and false descriptions and representations in commerce of Defendants' infringing merchandise; violation of California Civil Code section 3344(a); and violation of common law right to privacy. (Id. ¶¶ 21-32.) The proposed TRO seeks

an order enjoining the "manufacturing, distributing, selling or holding for sale" any Infringing Merchandise and to seize the Infringing Merchandise "bearing the federally registered trademarks, service marks, likenesses, logos and other indicia of the musical group known as "FLEETWOOD MAC."" (Dkt. No. 5-1, Proposed TRO Order.)

**Discussion**

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," Winter, 555 U.S. at 22, and the moving party bears the burden of meeting all four Winter prongs. See Cottrell, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653 F.3d 771, 776-77 (9th Cir. 2011).

It is well-established that a federal court cannot reach the merits of any dispute until it confirms that it retains subject matter jurisdiction to adjudicate the issues presented. Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 94-95 (1988). Federal

courts are under a continuing duty to confirm their jurisdictional power and are "obliged to inquire *sua sponte* whenever a doubt arises as to [its] existence . . . ." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977) (citations omitted); B.V. v. Plumas Unified Sch. Dist., 192 F.3d 1260, (9th Cir. 1999) ("federal courts are required *sua sponte* to examine jurisdictional issues such as standing."). Thus, prior to addressing the ex parte request for a TRO, as a threshold issue, the Court must determine if it has the power to entertain this suit at all. See Warth v. Seldin, 422 U.S. 490, 498 (1975) (determining whether a case has a justiciable case or controversy is "the threshold question in every federal case.") Article III of the United States Constitution restricts federal judicial power to the adjudication of "Cases" or "Controversies." U.S. Const. art. III, § 2. This is a "bedrock requirement." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 37 (1976)).

"Two components of the Article III case or controversy requirement are standing and ripeness." Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009). Both are evaluated at the time the action is commenced. Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1170 (9th Cir. 2002) ("Standing is determined as of the commencement of litigation."); Sierra Club v. U.S. Army Corps of Eng'rs, 446 F.3d 808, 814 (8th Cir.2006) ("Jurisdictional issues such as standing and ripeness are determined at the time the lawsuit was filed").

"'Standing is an essential and unchanging part of the case-or-controversy requirement' and is therefore a prerequisite to our jurisdiction." Washington v. Trump, 847 F.3d 1151, 1159 (9th Cir. 2017) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). To establish standing, a plaintiff must demonstrate it (1) has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and

particularized, . . . and (b) actual or imminent, not conjectural or hypothetical;" (2) that the injury was caused by, or is "fairly . . . trace[able] to the challenged action of the defendant;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61 (internal quotations and citations omitted). If the plaintiff fails to satisfy the constitutional requirements to establish standing, the Court lacks jurisdiction to hear the case and the complaint must be dismissed. See Valley Forge Christian Col., 454 U.S. at 475-76 ("Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States."). "[F]or injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way." Spokeo v. Robins, 136 S. Ct. 1540, 1548 (2016). On a TRO, Plaintiff must make a "clear showing of each element of standing." Washington v. Trump, 847 F.3d 1151, 1159 (9th Cir. 2017) (citation omitted).

Here, Plaintiff has failed to make a "clear showing" of each element of standing. It simply relies on numerous instances of bootlegging of other popular musical groups where courts have granted TRO applications with unknown defendants. However, those instances demonstrate a history of bootlegging in the music concert industry but does not satisfy the injury-in-fact for purposes of Plaintiff's standing to sue. Merely relying on other district courts' summary rulings based on facts distinct from the current case are not supportive.

For this concert tour, Plaintiff has not demonstrated it has yet suffered any injury, and consequently, has not demonstrated it has suffered an injury that affects it in a personal and individual way. See Spokeo, 136 S. Ct. at 1548. By failing to identify or attempting to identify any bootleggers on this concert tour that have engaged in selling counterfeit merchandise, Plaintiff has not demonstrated it has suffered or will suffer any injury. See Live Nation Merchandise, Inc. v. John Does, Case No. CV 15-3762-GHK(Ex), 2015 WL 12672733, at *2 (C.D. Cal. 2015) (denying ex parte TRO because plaintiff only presented generalized allegations of bootleggers in past tours and not with the current tour); see also SKS Merch, LLC v. Barry, 233 F. Supp. 2d 841, 843 (E.D. Ky.

6

18cv2703-GPB(JLB)

2002) (granting preliminary injunction where affidavit "detail[ed] multiple instances of bootlegging at eleven" prior concert stops on the same tour, and "produced photographs depicting various persons allegedly engaged in selling bootleg merchandise at and around [ ] concerts."). Similarly, Plaintiff does not provide any specific facts that any injury is "actual or imminent." Plaintiff relies on prior instances of bootlegging from two prior concert tours of Fleetwood Mac in 2003 and 2014. (Dkt. No. 5-5, Burns Decl. ¶ 6; Dkt. No. 5-7, Burns Decl., Ex. B.) However, Plaintiff fails to presents any facts that connect those bootleggers from 2003 and 2014 to the Defendants in this case. See Live Nation Merchandise, Inc., 2015 WL 12672733, at *2 (generalized assertions about prevalence of bootleggers in past tours not sufficient). Moreover, the past instances of prior bootlegging on prior Group tours, four years ago and fifteen years ago, are too remote to show that the injury will necessarily occur. Instead, Plaintiff presents a hypothetical and speculative threat of injury that may or may not occur on December 6, 2018. Because Plaintiff has failed to demonstrate an injury-in-fact, the other two factors for standing necessarily fails as they also rely on the existence of an injury. See Lujan, 504 U.S. at 560-61. The Court concludes Plaintiff has failed to demonstrate it has standing to bring the complaint. See Vannatta v. Keisling, 899 F. Supp. 488, 492 (D. Or. 1995) ("A plaintiff lacks standing because it alleges no more than a hypothetical threat of injury which cannot satisfy the concrete injury in fact requirement of Article III of the Constitution.")

"While standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addresses when litigation may occur." Lee v. Oregon, 107 F.3d 1382, 1387 (9th Cir. 1997). "[I]n many cases, ripeness coincides squarely with standing's injury in fact prong." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). In fact, the ripeness inquiry is often "characterized as standing on a timeline." Id. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union

Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985)). "The ripeness doctrine demands that litigants state a claim on which relief can be granted and that litigants' asserted harm is 'direct and immediate' rather than speculative or hypothetical." Hillbloom v. United States, 896 F.2d 426, 430 (9th Cir. 1990) (citing to Abbott Labs. v. Gardner, 387 U.S. 136, 152 (1967)). Here, Plaintiff has yet to demonstrate it has suffered any type of injury and the claim is not yet ripe for judicial intervention.

While the Court recognizes the difficulty in combatting bootleggers at high profile concerts, the Court has a duty mandated by the U.S. Constitution to determine whether it has jurisdiction over a case. See Valley Forge Christian College, 454 U.S. at 471. Here, Plaintiff has failed to demonstrate that it has standing and that the case is ripe for adjudication; therefore, the Court lacks subject matter jurisdiction and *sua sponte* DISMISSES the complaint.

**Conclusion**

Based on the reasoning above, the Court sua sponte DISMISSES the case for lack of subject matter jurisdiction and DENIES Plaintiff's ex parte application for temporary restraining order as MOOT.

IT IS SO ORDERED.

Dated: December 4, 2018

Hon. Gonzalo P. Curiel
United States District Judge